**ATTACHMENT "D" – DEFENDANT'S OUTLINE OF THE CASE**

## 1.    <u>Factual Summary</u>

On September 2, 2022, Plaintiff John "Grant" Walraven drove the subject 2018 Ford Edge ("Edge") from his home in Calhoun, Georgia to Rabun County High School to watch a football game.  During the game, the weather turned cold and rained.  After attending the football game, Plaintiff re-entered the driver seat of the Edge and turned on the seat heater.  He does not know to what level—low, medium, or high—the seat heater was activated during the drive.  Approximately 30 minutes into the drive, Plaintiff stopped at a gas station—where he exited the vehicle for approximately 10 minutes to pump gas.  He then re-entered the Edge and drove approximately 75 minutes back to Calhoun, Georgia where he turned off the seat heater.  When he arrived home, Plaintiff felt what he described as "knots" on his right buttock.  He woke up his wife, Plaintiff Julie Walraven, and asked her to look at the area.  Julie Walraven noted red/blistered areas and took photographs throughout the night and into the morning.

Plaintiff Grant Walraven sustained a spinal cord injury on August 26, 1982, that left him paralyzed on his right side and reduced his sensory and motor function from mid-stomach down on both sides.  Due to this condition, Plaintiff uses his left foot to press the gas and brake pedals when he drives, which places most of his weight was on his right buttock while he drives. Plaintiff drove in this manner

31

on September 2, 2022, (1) to Calhoun, Georgia from a conference at Brasstown Valley Resort in Young Harris, Georgia, (2) then to Rabun County, Georgia, and (3) finally back to his home in Calhoun, Georgia. Plaintiff John Grant Walraven did not perform any pressure releases while he was driving on September 2, 2022.

The subject Edge was owned by Grant Walraven's mother, but Plaintiff drove it regularly. Before September 2, 2022, Plaintiff had never used any seat heater—including in the subject Ford Edge, and he was "careful" about using heating pads due to his spinal cord injury. No driver of the 2018 Ford Edge had any issue with the driver seat heater before or after September 2, 2022. No visible damage occurred to or was present in the Ford Edge's driver seat on/after September 2, 2022.

Plaintiffs assert design-defect and failure to warn claims against Ford. Plaintiffs allege the Ford Edge was negligently designed because its seat's maximum temperature exceeded 105°F and the heater lacked a 10 minute shutoff. Plaintiffs allege "Ford should have provided an on-product warning alerting and informing users of the burn injury hazard associated with the design of its seat-heater."

Ford anticipates offering evidence that Mr. Walraven's injuries are more consistent with pressure injuries than thermal burns. The evidence is that the seat heater was working as designed, the seat surface never reached at/above 113

degrees Fahrenheit, and Mr. Walraven's skin never reached above 107 degrees Fahrenheit—which is not a sufficient temperature to cause even first degree burns at 90 minutes of use.

The evidence also shows that Mr. Walraven failed to heed his own knowledge about his particular risk associated with heating elements by turning on the heated seat to an unknown level for approximately 75 minutes, when in the past he never used any seat heater and only used heating pads "[v]ery seldom" and "only there for a couple of minutes and the[n] off because [he] can't feel" the heat. If his injuries were, in fact, burn injuries instead of pressure sores, then following any of his own pre-incident knowledge would have prevented any chance of burn. Ford also provided warnings and instructions in the owner's manual that, if followed, would have prevented the incident. Ford will also show the design of the 2018 Edge, including its heated seat, met and exceeded the applicable industry standards, and the Edge's design is in accordance with Ford's safety design guidelines and related standards.

The subject Ford Edge is designed to have a maximum temperature of 113 degrees Fahrenheit with an automatic shut-off at 90 minutes.  The evidence shows the seat heater did not exceed this temperature and the shutoff was active, so the seat operated as designed.  Page 145 of the Ford Edge's owner's manual contains a warning that states: "WARNING: People who are unable to feel pain to their

skin because of . . . spinal cord injury . . . must use caution when using the heated seat. The heated seat may cause burns even at low temperatures, especially if used for long periods of time. . . . . An overheated seat may cause serious personal injury." The Ford Edge's heated seat passed all the tests outlined in Ford's requirements for heated seats, as detailed in ST-0087.

The Society of American Engineers' ("SAE") Recommended Practice J3047, "Recommendation for Acceptable Operating Parameters of Heated Automobile Seats in Order to Mitigate Occupant Injury," relied on accepted medical research to determine there is no risk of even a first-degree burn from direct skin exposure to temperatures up to 113 degrees Fahrenheit at 90 minutes. SAE Recommended Practice J3047 also recommends that a vehicle's owner's manual should describe the risks of using heated seats for persons with compromised senses. The Ford Edge's heated seat design complied with Society of American Engineers Recommended Practice J3047.

## 2.   Relevant Rules & Statutes

### Federal Rules

- Federal Rules of Evidence.
- Federal Rules of Civil Procedure.
- Northern District of Georgia Civil Local Rules

### Federal Statutes & Regulations

- The National Traffic and Motor Safety Vehicle Act, 49 U.S.C. § 30101, *et seq.*

34

- All applicable Federal Motor Vehicle Safety Standards, 49 C.F.R. Part 571, including but not limited to FMVSS 101 and FMVSS 302
- All applicable National Highway Traffic Safety Administration Standards, 49 U.S.C. 30111 *et seq.*

*Without limiting the foregoing, Ford identifies the following salient rules and statutes:*

- 49 U.S.C. § 30101 (2007)
- 49 U.S.C. § 30102 (2007)
- 49 C.F.R. § 571.101 (2007)
- 49 C.F.R. § 571.302 (2007)

## Georgia Product Liability Law:

- Georgia Product Liability law, generally

*Without limiting the foregoing, Ford identifies the following salient rules and statutes:*

- O.C.G.A. § 51-1-11
- O.C.G.A. §51-11-7
- O.C.G.A. § 51-12-5.1
- O.C.G.A. §§ 51-12-1 – 51-12-13
- O.C.G.A. § 51-12-31
- O.C.G.A. § 51-12-33
- O.C.G.A. § 13-6-11
- O.C.G.A. § 16-5-60

## 3.    Illustrative Case Law

## Strict Liability, Negligence, Failure to Warn (Defect & Causation)
- *Banks v. ICI Americas*, 264 Ga. 732 (1994) (and its progeny)
- *Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc.*, 117 F.3d 490, 494 (11th Cir. 1997)
- *Jonas v. Isuzu Motors Ltd.*, 210 F. Supp. 2d 1373, 1380 (M.D. Ga. 2002), *aff'd*, 58 F. App'x 837 (11th Cir. 2003)
- *Ogletree v. Navistar Int'l Transp. Corp.*, 269 Ga. 443, 445, 500 S.E.2d 570, 572 (1998)

35

- *Shelton v. GALCO Int'l, Ltd.*, No. 3:16-CV-00033-TCB, 2017 WL 3597497, at *6 (N.D. Ga. July 19, 2017)
- *Ford Motor Co. v. Carter*, 238 S.E.2d 361, 365 (Ga. 1977)
- *Friend v. Gen. Motors Corp.*, 165 S.E.2d 734, 736–37 (Ga. Ct. App. 1968)
- *Hunt v. Harley Davidson Motor Co.*, 248 S.E.2d 15, 16 (Ga. Ct. App. 1978)
- *Lee St. Auto Sales, Inc. v. Warren*, 116 S.E.2d 243, 244 (Ga. Ct. App. 1960)
- *Center Chem. Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580, 581 (1975)
- *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)
- *Thomas v. Hubtex Maschinenbau GmbH & Co. KG*, No. 7:06-cv-81, 2008 WL 4371977, at *10 (M.D. Ga. 2008)
- *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74 (1995)
- *Haynes v. Cyberonics, Inc.*, No. 1:09-CV-2700-JEC, 2011 WL 3903238, at *6 (N.D. Ga. Sept. 6, 2011)
- *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 538 (2), 870 S.E.2d 739 (2022)
- *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3), 279 S.E.2d 264 (1981)
- Applicable Georgia Suggested Pattern Jury Instructions for Civil cases

## State of the Art

- *Greenway v. Peabody International Corp.*, 294 S.E.2d 541, 544 (Ga. Ct. App. 1982).
- *Russell v. Cynywd Investments*, 236 S.E.2d 147, 149 (Ga. Ct. App. 1977).

## Rule of Substantial Similarity

- *Barger v. Garden Way, Inc.*, 231 Ga. App. 723, 729, 499 S.E.2d 737, 744 (1998)
- *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 455, 543 S.E.2d 21, 23–24 (2001)

## Expert Testimony

- *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)
- *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004), *aff'd*, 168 F. App'x 893 (11th Cir. 2006)
- *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1360-62 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008)

- *Folsom v. Kawasaki Motors Corp. U.S.A.*, 509 F. Supp. 2d 1364, 1378 (M.D. Ga. 2007)
- The 2023 Amendments to Rule of Evidence 702

## Reasonableness and Necessity of Damages:

- *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1308 (11th Cir. 2020)
- *Georgia Ry. & Elec. Co. v. Gilleland*, 133 Ga. 621, 66 S.E. 944 (1909)
- *Wayco Enters., Inc. v. Crews*, 155 Ga. App. 775, 272 S.E.2d 745 (1980)
- *Murphey v. Northeastern Constr. Co.*, 31 Ga. App. 715, 121 S.E. 848 (1924);
- *Allen v. Southern Ry.*, 33 Ga. App. 209, 126 S.E. 722 (1924)

## Punitive Damages:

- *General Refractories Co. v. Rogers,* 240 Ga. 228, 239 S.E.2d 795, 799–800 (1977)
- *Stone Man, Inc. v. Green,* 263 Ga. 470, 471(1), 472, 435 S.E.2d 205 (1993)
- *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994)
- *BMW v. North America, Inc. v. Gore*, 517 U.S. 559 (1996)
- *State Farm Auto. Ins. Co. v Campbell*, 583 U.S. 408 (2003)
- *Ivy v Ford Motor Company*, 646 F.3d 769 (11th Cir. 2011)
- *Barber v. Perdue*, 194 Ga. App. 287 (1989)
- *Williams v. Tristar Prods., Inc.*, 418 F. Supp. 3d 1212, 1230 (M.D. Ga. 2019)
- Applicable Georgia Constitutional provisions
- Applicable U.S. Constitutional provisions.

Ford believes these are illustrative authorities regarding the remaining issues in this case.  Ford has cited and may rely on the additional authorities it has cited in its filings with the Court, as necessary, and respectfully requests to rely on case  law that may be included in future filings with the Court.